IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00648-BNB

AUDREY LEE TENNYSON,

    Plaintiff,

v.

MATTHEW CARPENTER, Chief of Unit Managers,
ROBERT SPARKS, Unit Manager,
"THE SUPERIORS," Not Yet Identified,
VANCE EVERETT, K.C.C.C. Warden,
KIT CARSON CORRECTIONAL CENTER, Private Prison, and
ROGER WERHOLTZ, C.D.O.C. Executive Director,

    Defendants.

ORDER OF DISMISSAL

    Plaintiff, Audrey Lee Tennyson, is a prisoner in the custody of the Colorado Department of Corrections (DOC) who currently is incarcerated at the Kit Carson Correctional Center in Burlington, Colorado.  Mr. Tennyson initiated the instant action by filing *pro se* a Prisoner Complaint (ECF No. 1) pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.  On June 3, 2013, in response to an order of April 2, 2013 (ECF No. 10) that, inter alia, explained that his original complaint failed to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, he filed *pro se* an amended Prisoner Complaint (ECF No. 18) pursuant to §§ 1983, 1985, and 1986 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc - 2000cc-5.  Mr. Tennyson asks for money damages and declaratory and injunctive relief.

Mr. Tennyson has been granted leave to proceed pursuant to the federal *in forma pauperis* statute, 28 U.S.C. § 1915. Subsection (e)(2)(B) of § 1915 requires a court to dismiss sua sponte an action at any time if the action is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief. A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). Under § 1983, a plaintiff must allege that the defendants have violated his or her rights under the Constitution and laws of the United States while they acted under color of state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Mr. Tennyson is cautioned that his ability to file a civil action or appeal in federal court *in forma pauperis* pursuant to § 1915 may be barred if he has three or more actions or appeals in any federal court that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Under § 1915(g), the Court may count dismissals entered prior to the enactment of this statute. *Green v. Nottingham*, 90 F.3d 415, 420 (10th Cir. 1996).

The Court must construe Mr. Tennyson's amended complaint liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court cannot act as an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. For the reasons stated below, the amended complaint will be dismissed as legally frivolous pursuant to § 1915(e)(2)(B).

Mr. Tennyson's amended complaint is verbose, redundant, and lacks organization. His allegations appear to be as follows:

On November 9, 2011, during a facility shake-down, Mr. Tennyson's cell was searched, and Defendant Sparks removed allegedly authorized personal property (APP) from his cell. The APP consisted of two chaplain-issued, three-ring binders for the storage of religious choir music that Mr. Tennyson converted to his personal use as photo albums with family photos on the covers and in clear plastic display sleeves inside the binders. He complains that after confiscation of the binders he was convicted on disciplinary charges for misusing the binders as photo albums and suspended by the chaplain from choir membership eligibility.

Mr. Tennyson further alleges that in an effort to retrieve the binders he filed a grievance, which Mr. Sparks denied. He complains that Defendant Vance Everitt, the Kit Carson Correctional Facility warden, refused to review his appeal from the denial of his grievance, and that Defendant Carpenter reviewed and denied the appeal instead. He is suing Defendant Roger Werholtz as DOC executive director in charge of the prison grievance procedure. Finally, he alleges that following the filing of his step-three grievance, the confiscated family photos were returned to him without the binders.

On the basis of these allegations, Mr. Tennyson asserts overlapping claims of constitutional violations. He contends Mr. Sparks retaliated against him by confiscating the binders and that Mr. Carpenter and "The Superiors" retaliated against him for filing grievances by subjecting him to disciplinary action and suspending him from choir eligibility. Mr. Tennyson also alleges that by denying him choir eligibility Mr. Carpenter and "The Superiors" denied him the right to exercise his religious beliefs freely under

3

RLUIPA and the First Amendment. He further asserts Fourteenth Amendment due process and Fourth Amendment search and seizure violations based upon Mr. Sparks' confiscation of his personal property, an Eighth Amendment claim of cruel and unusual punishment against Defendant Carpenter and "The Superiors" for denying him choir eligibility and having his personal photographs confiscated, and a Fourteenth Amendment claim that against Defendant Carpenter and "The Superiors" who he contends violated his equal protection rights because he was the only choir member disciplined. Finally, Mr. Tennyson alleges that Mr. Carpenter and "The Superiors" conspired pursuant to § 1985(3) with the chaplain, who is not a named Defendant, to discipline him.

The Court first notes that Mr. Tennyson is suing Mr. Sparks for denying his grievance, Mr. Everett for refusing to review the appeal from the denial of his grievance, and Mr. Carpenter for reviewing and denying the appeal instead. To the extent Mr. Tennyson is suing any defendant for denying grievances as to his claims, the claims fail. "The denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir.2012) (quotation omitted); *see also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir.2009); *Whitington v. Ortiz*, 307 Fed. App'x 179, 193 (10th Cir.2009). In *Stewart*, a prisoner pointed to evidence of the prison warden's knowledge of the alleged constitutional violation, yet denied an appeal of his grievance. The United States Court of Appeals for the Tenth Circuit (Tenth Circuit) concluded, "Whatever knowledge [the warden] may have had when he denied the appeal, his only involvement was to deny the grievance appeal, which is insufficient

4

for § 1983 liability." *Id.* at 1328. In addition, "[merely sending grievances to a warden is not enough to attach liability." *See Phillips v. Tiona*, No. 12-1055, 2013 WL 239891 at *6 (10th Cir. 2013) (not published). Therefore, the claims against Messrs. Everett, Carpenter, and Sparks, to the extent Mr. Sparks is being sued for denial of the grievance, will be dismissed.

Mr. Tennyson also may not establish personal participation by Mr. Werholtz, who is being sued in his capacity as DOC executive director in charge of the prison grievance procedure. In the April 2 order for an amended complaint, Mr. Tennyson was advised that a defendant may not be held liable on a theory of respondeat superior merely because of his or her supervisory position. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983). A supervisor is only liable for constitutional violations he or she causes. *See Dodds v. Richardson*, 614 F.3d 1185, 1211 (10th Cir. 2010). Therefore, the claims against Mr. Werholtz will be dismissed.

Also in the order for an amended complaint, Mr. Tennyson was informed he may use fictitious names, such as "John or Jane Doe," if he did not know the real names of the individuals who allegedly violated his rights. However, he was warned that if he used fictitious names he must provide sufficient information about each defendant so that he or she can be identified for purposes of service. Mr. Tennyson's general reference to "The Superiors" is insufficient for service purposes. The claims against "The Superiors" also will be dismissed. Finally, Mr. Tennyson makes no claims against the Kit Carson Correctional Facility. He merely alleges that the DOC has "clothed this facility with authority and the power" it normally possesses. ECF No. 18 at 3.

Therefore, the Kit Carson Correctional Facility also will be dismissed as a party to this action. The only remaining Defendant, therefore, will be Mr. Sparks. However, the Court will address the merits of all Mr. Tennyson's claims, not only those asserted against Mr. Sparks, starting with Mr. Tennyson's retaliation claim.

Prison officials may not retaliate against a prisoner because he exercises his constitutional rights. *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir.1990) (addressing claim for retaliation in a First Amendment context). *See also O'Bryant v. Finch*, 637 F.3d 1207, 1212 n.10 (11th Cir. 2011) (noting that some courts describe the filing of false disciplinary charges in retaliation for the inmate's complaint about the conditions of his confinement not as a First Amendment retaliation claim but as a due process claim and recognizing that "[h]owever labeled, our Court recognizes that an inmate has a § 1983 action if prison officials file false disciplinary charges in retaliation for the inmate exercising his right to free speech by making grievances about prison conditions").

To state a retaliation claim, Mr. Tennyson "must plead facts indicating that he can plausibly prove three elements at trial:  (1) he engaged in constitutionally protected activity; (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the defendants' actions were substantially motivated by the plaintiff's protected activity." *Magluta v. U.S. Fed. Bureau of Prisons*, No. 08-cv-00404, 2009 WL 1504749, at *3 (D. Colo. May 27, 2009) (unpublished) (addressing claim for retaliation in a First Amendment context) (citing *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir.2007)). "A plaintiff must allege facts to show that retaliation was the animus behind the defendants' actions, i.e., a plaintiff must show that 'but for' a desire to retaliate, the

defendants would not have acted as they did." *Magluta*, No. 08-cv-00404, 2009 WL 1504749, at *3 (citations omitted). "An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of [his] constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir.1998) (internal quotation marks and citation omitted). Mr. Tennyson fails to allege specific facts tending to show that the alleged acts of retaliation were substantially motivated by his protected activity. His claim of retaliation is without merit and will be dismissed.

Mr. Tennyson's allegation that the denial of choir eligibility denies him the right to freely exercise his religious beliefs under RLUIPA and the First Amendment also is without merit. In order to allege a violation of the First Amendment in connection with the free exercise of religion, there is a two-step inquiry. *Peterson v. Lampert*, 499 F. App'x 782, 785 (10th Cir. 2012). First, Plaintiff must show "'that a prison regulation substantially burdened sincerely-held religious beliefs.'" *Id.* (quoting *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir.2007)). Second, if the prison-official defendants identify a legitimate penological interest that they contend justified the impinging conduct, the court then must balance the factors set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), to determine the reasonableness of the regulation. *Kay*, 500 F.3d at 1218. As to asserting a violation of RLUIPA, Plaintiff must show that he wished to engage in "(1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Peterson*, 499 F. App'x at 785 (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir.2010)). Thus, Mr. Tennyson must show that his religious beliefs are sincerely held and that the denial of his choir eligibility substantially burdened his free exercise of religion. Mr. Tennyson

does not allege facts demonstrating that he is being denied the right to practice his sincerely held religious beliefs.  He only alleges facts demonstrating that he is being denied choir eligibility.  This denial does not deny him the ability to practice his religion.  The First Amendment free exercise of religion and RLUIPA claims will be dismissed.

Any claim by Mr. Tennyson against Mr. Sparks or any other Defendant under the Fourteenth Amendment for confiscating his property lacks merit.  The United States Constitution guarantees due process when a person is deprived of life, liberty, or property.  *See Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).  However, "the United States Supreme Court has held that neither negligent nor intentional deprivations of property under color of state law that are random and unauthorized give rise to a § 1983 claim where the plaintiff has an adequate state remedy . . . ."  *Gillihan v. Shillinger*, 872 F.2d 935, 939 (10th Cir. 1989), *overruled on other grounds by Clark v. Wilson*, 625 F.3d 686, 691 (10th Cir. 2010); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (finding that an unauthorized intentional deprivation of property does not violate due process if an adequate postdeprivation remedy for the loss is available).

Further, a prison grievance procedure is an adequate postdeprivation remedy if the grievance procedure provides a meaningful remedy.  *See Hudson*, 468 at 536 & n.15; *Williams v. Morris*, 697 F.2d 1349, 1351 (10th Cir. 1982).  The fact that Mr. Tennyson's administrative grievances were not successful, by itself, does not mean that the grievance procedure was not an adequate remedy.  Even if the DOC grievance procedure was not available to Mr. Tennyson because of his alleged failure to follow the procedure, Mr. Tennyson also has an adequate remedy available in state court under state law.  *See, e.g.*, *Cooper v. Belcher*, 2010 WL 3359709, at *15 (D. Colo. Aug. 25,

2010) (unpublished) (noting that "[a]dequate state remedies are not limited to the filing of grievances, but include filing complaints in state court.").

In addition, prisoners are not protected under the Fourth Amendment from unreasonable searches of their prison cells or from the wrongful seizure of property contained in their cells because "the Fourth Amendment does not establish a right to privacy in prisoners' cells." *Rodriguez-Rodriguez v. United States*, 4 F. App'x 637, 739 (10th Cir. 2001) (citing *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995); *Hudson v. Palmer*, 458 U.S. 517, 522-30 (1984)).

Mr. Tennyson's Eighth Amendment claim of cruel and unusual punishment against Mr. Carpenter and "The Superiors" for denying him choir eligibility and confiscating his personal photographs is without merit.  A prisoner claiming that he has been subjected to cruel and unusual punishment based on the conditions of his confinement must demonstrate, in part, that the infringement was sufficiently serious. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "[E]xtreme deprivations are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  The conditions must deprive a prisoner of the "'minimal civilized measure of life's necessities.'"  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  In the absence "of a specific deprivation of a human need, an Eighth Amendment claim based on prison conditions must fail." *Shifrin v. Fields*, 39 F.3d  1112, 1114 (10th Cir. 1994) (internal quotation marks omitted).  The core areas entitled to protection pursuant to the Eighth Amendment include food, shelter, sanitation, personal safety, medical care, and adequate clothing.  *See Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992).

Mr. Tennyson's claims focus on his disagreement with the conditions of his confinement. He specifically disagrees with the denial of choir eligibility and confiscation of his personal photographs, which he contends eventually were returned to him. The fact that Mr. Tennyson disagrees with the conditions of his confinement does not mean that he is deprived of the minimal civilized measure of life's necessities. In fact, as the Supreme Court of the United States has observed, "[t]o the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offense against society." *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981); *see also Battle v. Anderson*, 788 F.2d 1421, 1427-28 (10th Cir. 1986) (affirming that a prison is "not a nursery school" but a place for confining convicted felons). The Eighth Amendment claim of cruel and unusual punishment will be dismissed.

Mr. Tennyson's contention that he is being treated unequally raises equal protection concerns. Specifically, Mr. Tennyson asserts that:

> Whether the decision [to discipline him] was based on Mr. Tennyson being a non-passive Christian using the grievance procedure, or because he was the only African-American on the Team, the fact that he was the only member from the Team to be disciplined for a conduct common to them all, constitutes discrimination in violation of the Equal Protection Clause.

ECF No. 18 at 23.

The Equal Protection Clause requires that no state "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. "The threshold requirement of an Equal Protection claim is a showing that the government discriminated among groups." *Kinnell v. Graves*, 265 F.3d 1125, 1128 (10th Cir. 2001).

"A state practice will not require strict judicial scrutiny unless it interferes with a 'fundamental right' or discriminates against a 'suspect class' of individuals." *Vasquez v. Cooper*, 862 F.2d 250, 252 (10th Cir. 1988).  "Unless a legislative classification either burdens a fundamental right or targets a suspect class, it need only bear a 'rational relation to some legitimate end' to comport with the Equal Protection Clause of the Fourteenth Amendment." *White v. Colorado*, 157 F.3d 1226, 1234 (10th Cir.1998) (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)) (emphasis added). *See also Vasquez*, 862 F.2d at 25152 ("Unless it provokes strict judicial scrutiny, a state practice that distinguishes among classes of people will typically survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose") (citation omitted).

Mr. Tennyson's allegations do not implicate either a fundamental right or a protected class. Although he mentions he was the only African-American in the choir and also mentions he is a non-passive Christian, he bases his equal protection claim on the allegation that he was the only choir member disciplined for misusing the binders as a photo album and suspended from choir membership eligibility. Therefore, when considering his equal protection claim, the Court applies a rational basis test if "the challenged government action does not implicate either a fundamental right or a protected class." *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1110 (10th Cir. 2008). A person's right to equal protection is violated when the government or its officials treat him differently than others who are similarly situated. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). Equal protection, however, does not require that all people be treated

11

identically.  *See Hendking v. Smith*, 781 F.2d 850, 851 (11th Cir. 1986); *Zeigler v. Jackson*, 638 F.2d 776, 779 (5th Cir. 1981).

Mr. Tennyson's allegations fail to demonstrate how his equal protection rights were violated by being disciplined and suspended.  It is not plausible that "there are no relevant differences between [Mr. Tennyson] and other inmates that reasonably might account for their different treatment." *Templeman*, 16 F.3d at 371.  As a result, Mr. Tennyson cannot establish that he was treated differently than "similarly situated" inmates.  To the extent Mr. Tennyson asserts his equal protection claim pursuant to 42 U.S.C. § 1981, the claim also fails.  Section 1981 applies to commercial and employment contracts, not to prisoner disciplinary and suspension proceedings.  The equal protection claim is meritless.

Finally, Mr. Tennyson's claims under 42 U.S.C. §§ 1985 and 1986 must be dismissed.  His allegations do not support a claim under § 1985(1) (preventing officer from performing duties) or § 1985(2) (obstructing justice, intimidating party, witness, or juror).  Plaintiff appears to be attempting to assert a claim under § 1985(3), which creates a cause of action against persons who conspire to deprive a person or class of persons equal protection or privileges.  *See Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir.1994).  To state a claim under § 1985(3), a plaintiff must allege four elements: (1) a conspiracy; (2) for the purpose of depriving, directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) the conspirators committed some act in furtherance of the conspiracy; and (4) the plaintiff was either injured in his person or property or was deprived of having and

exercising any right or privilege of a citizen of the United States. *See Griffin v. Breckenridge*, 403 U.S. 88, 103-04 (1971).

The Tenth Circuit has held that, in order to support a claim under the statute, a plaintiff must be a member of a statutorily protected class, and actions taken by defendants must stem from the plaintiff's membership in that class. *See Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 746-47 (10th Cir. 1980). Moreover, there must be some racial or other class-based, invidiously discriminatory animus behind the conspirator's actions. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993); *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 838 (1983); *Graham v. City of Okla. City, Okla.*, 859 F.2d 142 (10th Cir.1988); *Brown v. Reardon*, 770 F.2d 896 (10th Cir.1985).

Mr. Tennyson's amended complaint is devoid of any facts to show that the actions taken by Defendants stemmed from his membership in a protected class. As such, his § 1985(3) claim will be dismissed. Absent a viable § 1985(3) conspiracy claim, Mr. Tennyson's claim under § 1986 (relating to the neglect or refusal to prevent a § 1985 violation) must also fail. *See Brown*, 770 F.2d at 905 (§ 1986 is dependent upon the validity of a § 1985 claim). Therefore, the amended Prisoner Complaint will be dismissed as legally frivolous.

Finally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Mr. Tennyson files a notice of appeal he must also pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States

Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Accordingly, it is

ORDERED that the amended Prisoner Complaint (ECF No. 18) and the action are dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied. It is

FURTHER ORDERED that any pending motions are denied as moot.

DATED at Denver, Colorado, this 21st day of June, 2013.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court